UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ETHAN THOMAS,<br>    Plaintiff<br><br>V.<br><br>NEW ENGLAND FAST FERRY OF<br>MASSACHUSETTS, LLC,<br>NEW ENGLAND FAST FERRY<br>COMPANY, LLC, and<br>INTERLAKE LEASING IV, INC.,<br>    Defendants | Civil Action<br><br>No. 05-11443-GAO |

JOINT PRETRIAL STATEMENT

1.   Concise summary of the evidence

    a.   Plaintiff

The Plaintiff was and is a dockworker with the Steamship Authority at its Vineyard Haven terminal.  The Defendants own and operate the New England Fast Ferry.  The injury occurred during the course of the docking of the Fast Ferry on its first trip of the morning on December 27, 2004.  This case arose when the Plaintiff was hit in the head by the handle of a winch that he was cranking during the docking of the Defendants' ferry.

When a ferry approaches the dock, the dockworkers will raise the ramp (formally called the "transfer bridge") from the dock to the ferry as needed depending on the tide. The ramp is raised with an electric winch.  The ferry is supposed to hold itself away from the ramp until the dockworkers have the ramp in place.  The ferry will then move forward and the dockworkers will lower the ramp onto the deck of the ferry.  On the morning of the accident, there was a very high tide presumably caused in part by heavy weather that had been moving through the area

overnight. The Fast Ferry is higher than the Steamship Authority's ferries, and so, with the high tide, the ramp could not be raised high enough with the electric winch. There is a manual winch on the ramp which can be used to raise it higher than the electric winch will go.

The dockworkers thus used the manual winch to raise the ramp high enough so that the Fast Ferry could dock. The dockworkers, including the Plaintiff, began taking turns cranking the winch. They cranked off and on for about 7 minutes before the accident occurred. The time is well documented because the Steamship Authority's security cameras monitor the ramps, and the Steamship Authority has provided the parties the footage from about 7 minutes pre-accident to 3 minutes post-accident.

While the Plaintiff was cranking the winch, the ferry hit the ramp, and the winch handle jumped out of his hands, revolved backwards, and hit him in the head. The Plaintiff's co-workers saw and/or felt the ferry hit the ramp. The Plaintiff contends that the winch handle jumped out of his hands because the Fast Ferry hit the ramp when it should not have, and the impact on the ramp caused him to lose control of the winch handle. The Plaintiff contends that the winch was in good condition that morning and that it had been deiced.

After the accident, the Plaintiff was taken immediately to Martha's Vineyard Hospital with headaches, nausea, concussion, and neck pain. A CT scan showed a moderate subgaleal hematoma over the left frontal parietal region. This region of the brain has to do in part with speech. 2 days later, he went back to the ER complaining of difficulty in finding words and tinnitus. He had 2 more CT scans over the next 3 days which confirmed the hematoma and also showed swelling in that area.

On January 4, he went to see a local neurologist, Barbara Stelle, M.D., who had

witnessed the accident because she had been waiting for the Fast Ferry. Dr. Stelle recommended an MRI, which was unremarkable. She felt that his symptoms would resolve. On January 5, he went to a neurologist in Boston, Chun Lim, M.D., who suspected that the Plaintiff had a mild Broca's aphasia secondary to the trauma as the region of impact overlay Broca's area. He felt that the Plaintiff's prognosis was good and felt that Mr. Thomas would not have any permanent neurological deficits. The Plaintiff had physical therapy and speech therapy at the Martha's Vineyard Hospital until the end of June, 2005. His speech therapy would have continued past the end of June, except that the only speech therapist on the island moved away, and the hospital was unable to find a replacement. The Plaintiff was disabled from work for 8 weeks, and has a lost earnings claim of $5,094.40. His medical bills were $18,207.64. The Plaintiff's speech deficits and neck and upper back problems resolved, for the most part.

    b.    <u>Defendants</u>

The plaintiff is thirty-five [35] years old and recently built a home for himself and his family in Edgartown, Massachusetts. He is married and has one child, who was born in January 2006. He has no other dependents.

Since 2001, he has worked as a full time dockworker at the Vineyard Haven Terminal, which is owned and operated by The Woods Hole, Martha's Vineyard and Nantucket Steamship Authority [hereinafter referred to as "the Steamship Authority"]. As a dockworker, he collects tickets, directs vehicle traffic, and assists with docking vessels.

On December 27, 2004 at 0650 hours, the MV WHALING CITY EXPRESS, owned by the defendant, Interlake Leasing IV, Inc. and chartered by the defendant, New England Fast Ferry of Massachusetts, LLC, departed from the State Pier Terminal in New Bedford,

Massachusetts bound for the ferry terminal in Vineyard Haven.

New England Fast Ferry of Massachusetts, LLC entered into a license agreement with the Steamship Authority that permits it to use dock and wharf facilities located in Vineyard Haven, Massachusetts.

The prevailing weather conditions over Vineyard Sound that morning were light snow with winds blowing 20 to 30 m.p.h. from the North.  Captain Albion Davis was the Master of the MV WHALING CITY EXPRESS.  His crew consisted of a Mate and a Deckhand.  Eight [8] passengers were onboard the MV WHALING CITY EXPRESS for its first voyage to Martha's Vineyard that day.

At 0750 hours, the MV WHALING CITY EXPRESS arrived at the ferry terminal in Vineyard Haven.  There are two [2] slips in Vineyard Haven.  Typically, the MV WHALING CITY EXPRESS docks at the north slip or Slip No. 1 because its electric winch raises the transfer bridge to a height which accommodates the vessel's freeboard.  On this morning, the M/V ISLANDER, which is owned and operated by the Steamship Authority, was docked in Slip No. 1.  Accordingly, Captain Davis docked the MV WHALING CITY EXPRESS at Slip No. 2.

Before docking the MV WHALING CITY EXPRESS at Slip No. 2, the Steamship Authority dockworkers found it necessary to raise its transfer bridge.  This was performed by utilizing its winch's manual setting because its electric setting did not raise the transfer bridge to a sufficient height to accommodate the vessel's freeboard.

Captain Davis held the MV WHALING CITY EXPRESS against an alignment dolphin approximately five [5] feet from the transfer bridge while the Steamship Authority personnel raised it to its requisite height.

The Steamship Authority dockworkers increased the height of the transfer bridge by manually cranking the winch's handle. They occasionally cranked the winch handle, left the winch, and then return to it to raise the transfer bridge higher. The manual cranking continued for several minutes while the vessel waited.

At his deposition, the plaintiff testified that he was instructed to manually crank the winch after the winch's counterweights "bottomed out" and the transfer bridge could not be raised any higher with the electric motor. The plaintiff recalled that this was the first occasion that he manually cranked the winch. The plaintiff also testified that the winch's gear teeth were icing up and the dockworkers sprayed deicer on the gear teeth to melt the ice.

The plaintiff testified that the weight of the transfer bridge was "20,000 pounds" and therefore, cranking the winch required alternating with other employees. The plaintiff testified that he stood behind the winch handle and cranked it four to five [4-5] times and was then relieved. Five [5] minutes later, the plaintiff attempted to turn the winch handle. As he tried to turn the handle, it recoiled, and struck him in the forehead above his left eye. The plaintiff testified that he was pushing with all of his weight when the handle recoiled.

After receiving the blow to the head, the plaintiff immediately fell to the ground, then stood up, and ran towards the parking lot and the Vineyard Haven Terminal Building. Another Steamship Authority employee, Dennis Vogel, who was standing next to the plaintiff when he was injured, ran with the plaintiff to his truck and drove the plaintiff to the Emergency Room at Martha's Vineyard Hospital.

At the time of alleged incident, Captain Davis was piloting the MV WHALING CITY EXPRESS. He testified that from his vantage point in the pilothouse, he saw the plaintiff rise up

from the ground and run towards the parking lot before the MV WHALING CITY EXPRESS contacted the transfer bridge. Captain Davis observed that the plaintiff was approximately five [5] feet from the winch when he stood up. Afterwards, the vessel's crew gave Captain Davis a hand signal to move the vessel forward in order to secure it to the transfer bridge.

After the incident, Captain Davis did not speak with the Steamship Authority personnel, but learned from his crew that the winch handle struck the plaintiff in the head. Captain Davis presumed that the winch malfunctioned and could not recall any further reports on the incident. Captain Davis testified that there was no physical damage to the MV WHALING CITY EXPRESS during the docking maneuvers.

At 0812 hours, the MV WHALING CITY EXPRESS departed from Vineyard Haven with fifteen [15] passengers aboard for its return trip to New Bedford. The vessel operated pursuant to its remaining daily schedule.

At the Martha's Vineyard Hospital Emergency Room, the plaintiff's head wound was stapled and stitched. Head CT Scans revealed no skull fracture or intracranial bleeding. After a few hours, the plaintiff was discharged home.

The plaintiff remained out of work for the next eight [8] weeks. He claims to have incurred approximately $5,100.00 in Lost Wages. He further claims that his medical bills total some $9,700.00.

In February 2005, he returned to work at the Steamship Authority on a part-time basis. After two weeks working part-time, the plaintiff resumed working on a full-time basis. He continues working as a dockworker at the Steamship Authority without limitation.

In January 2005, his treating neurologist, Dr. Chun Lim stated he had "no permanent

neurological deficits from this trauma." In mid-February 2005, Dr. Lim noted that the plaintiff "needs to treat postconcussive syndrome and anxiety." He proscribed Nortriptyline to treat the plaintiff's postconcussive headaches and Clonazepam to help with anxiety. At his deposition, the plaintiff testified that he continued to experience drooping face, slurred speech and stuttering for several months thereafter. The plaintiff also complained of recurring left shoulder and upper back pain. He sought physical therapy for the back pain, which allegedly reoccurs frequently. The plaintiff also admitted to an extensive weightlifting regiment which may contribute to his upper back and left shoulder pain.

The plaintiff also claims that he became anxious and depressed because of his alleged speech problems. However, the plaintiff's medical history reveals that he experienced panic attacks, anxiety, and left shoulder & neck pain in the years preceding the alleged incident. He reportedly sought professional counseling because "things were rough." After returning to work in February 2005, his depression decreased and eventually subsided. He claims that he presently does not suffer from depression and anxiety. The plaintiff is not presently treating for any medical condition related to the alleged incident.

2. <u>Facts established by pleadings, stipulations or admissions of counsel</u>

    1. On or about December 27, 2004, the Defendant, New England Fast Ferry of Massachusetts, LLC, operated the M/V WHALING CITY EXPRESS.

    2. On or about December 27, 2004, the Defendant, New England Fast Ferry of Massachusetts, LLC, controlled the M/V WHALING CITY EXPRESS.

    3. On or about December 27, 2004, the Defendant, Interlake Leasing IV, Inc., owned the M/V WHALING CITY EXPRESS.

3. <u>Contested issues of fact</u>

    1. Whether the M/V WHALING CITY EXPRESS struck the ramp at Slip No. 2 in Vineyard Haven.

    2. Whether the Plaintiff's injury occurred as a result of the M/V WHALING CITY EXPRESS striking the ramp or some other cause.

    3. The nature and extent of the injuries that the Plaintiff suffered as a result of the accident.

    4. Whether the prevailing weather conditions affected the plaintiff's operation of the manual winch at Slip No. 2 in Vineyard Haven.

    5. Whether the manual winch at Slip No. 2 in Vineyard Haven malfunctioned at the time of the Plaintiff's accident.

4. <u>Jurisdictional questions</u>

Whether this Honorable Court has personal jurisdiction to entertain this action against the defendants, Interlake Leasing IV, Inc. and New England Fast Ferry Company, LLC.

5. <u>Questions raised by pending motions</u>

The Plaintiff has filed a motion to exclude certain opinions of the Defendants' liability expert, Henry McKenna, P.E. The Defendants have filed a motion for CORI access with respect to the Plaintiff. These motions are pending. The parties will be filing motions in limine as set forth in section 6.

6. <u>Issues of law, including evidentiary questions</u>

The parties are not aware of any unusual issues of law, but reserve the right to submit a memorandum of law on such issues if any should arise.

The primary issue of law is whether the defendants were negligent due to the negligent and reckless operation of the vessel, M/V WHALING CITY EXPRESS, by its Master.

The Plaintiff is filing motions in limine this day with respect to the following evidentiary issues:

1. the Plaintiff's use of steroids in the past

2. the Plaintiff's use of marijuana and cocaine in the past

3. the Plaintiff's criminal conviction for possession of cocaine

4. the alleged replacement or repairs of the winch in question by the Steamship Authority after the Plaintiff's accident

5. the alleged complaints made by Manny Somoano regarding the winch prior to the Plaintiff's accident

The Defendants intend to file motions in limine with respect to the following evidentiary issues:

1. Whether the plaintiff and his co-workers are qualified as winch experts because of their experience with the manual winch and its operation.

2. Whether any expert opinions of Linda H. Riley should be excluded from evidence.

3. Whether the plaintiff's audio recording should be excluded from evidence.

4. Whether photographs of the winch, transfer bridge and the plaintiff should be limited and/or excluded from evidence.

5. Whether the medical opinions of the plaintiff's treating medical providers should be limited to the content of their treatment records.

7. <u>Requested amendments to the pleadings</u>

On several occasions, the defendants have attempted to obtain the plaintiff's assent to

dismiss New England Fast Ferry Company, LLC and Interlake Leasing IV, Inc. from this action with prejudice because New England Fast Ferry of Massachusetts, LLC is the local operating company in Massachusetts. To date, the plaintiff's counsel has yet to respond to this request..

8. <u>Additional matters to aid in the disposition of the action</u>

    None.

9. <u>Probable length of the trial</u>

    4-5 days.

10. <u>Witnesses</u>

    A. <u>Plaintiff</u>

Richard Clark
390 Franklin St.
Vineyard Haven, MA

Albion G. Davis, III
758 Purchase St.
New Bedford, MA 02740

Raymond DeBettencourt
317 State Rd.
Vineyard Haven, MA 02568

Michael Glasfeld
42 Clift St.
Mystic, CT

Richard F. McElhinney
33 Clover Hill Dr.
Vineyard Haven, MA 02568

Linda H. Riley, M.S., CCC-SLP
6 Pelican Ct.
Ocean Pines, MD 21811

Mark K. Rozum

4 Cranberry Ridge Rd.
Mashpee, MA

Manny Somoano
249 County Rd.
Oak Bluffs, MA 02557

Barbara A. Stelle, M.D.
P.O. Box 2538
Edgartown, MA 02539

Ethan Thomas
P.O. Box 2900
Edgartown, MA 02539

Dennis A. Vogel
25 June Ave.
Oak Bluffs, MA 02568

Carl Walker
7 Shaker Lane
E. Falmouth, MA

Keepers of the records of, or other representative from:

Beth Israel Deaconess Medical Center
330 Brookline Ave.
Boston, MA 02215

Beth MacDonald, M.D.
1 Hospital Road
P.O. Box 2159
Oak Bluffs, MA 02557

Martha's Vineyard Hospital
P.O. Box 1477
Oak Bluffs, MA 02557

Shields MRI - Dartmouth
313 Faunce Corner Road
Dartmouth, MA 02747

Barbara A. Stelle, M.D.

P.O. Box 2538
Edgartown, MA 02539

Woods Hole, Martha's Vineyard and Nantucket Steamship Authority
P.O. Box 284
Woods Hole, MA 02543

    B.    <u>Defendants</u>

Albion G. Davis, III
758 Purchase Street
New Bedford, MA 02740

Michael Glasfeld
42 Clift Street
Mystic, CT 06355

Thomas Murphy
314 Hope St., Apt. 5
Bristol, RI 02809

Melissa Scolovino
226H West Main Rd.
Little Compton, RI 02837

Henry A. McKenna, P.E.
35 Hubbard Road
Weston MA 02493

Brian Mercer, MD
173 Lincoln Street
Newton, MA  02161

Dennis A. Vogel
25 June Ave.
Oak Bluffs, MA 02568

Raymond DeBettencourt
317 State Road
Vineyard Haven, MA 02568

Manny Somoana
249 County Road

Oak Bluffs, MA 02557

Carl Walker
7 Shaker Lane
East Falmouth, MA 02536

Mark K. Rozum
4 Cranberry Ridge Rd.
Mashpee, MA 02649

Phillip J. Parent
27 Castle Road
East Falmouth, MA 02536

**Keeper of the records of**:

Beth Israel Deaconess Medical Center
330 Brookline Ave.
Boston, MA 02215

Chun Lim, M.D., Ph.D.
Beth Israel Deaconess Medical Center
Department of Neurology
330 Brookline Ave.
Boston, MA 02215

Beth MacDonald, M.D.
1 Hospital Road
P.O. Box 2159
Oak Bluffs, MA 02557

Martha's Vineyard Hospital
P.O. Box 1477
Oak Bluffs, MA 02557

Shields MRI – Dartmouth
313 Faunce Corner Road
Dartmouth, MA 02747

Barbara A. Stelle, M.D.
25 Beetle Swamp Road
Edgartown, Massachusetts 02539

David J. Gorenberg, M.D.
354 Gifford Street,
Suite 1
Falmouth, Massachusetts 02540

Raymond Monto, M.D.
12 Cournoyer Road
West Tisbury, Massachusetts 02575

Woods Hole, Martha's Vineyard and Nantucket Steamship Authority
P.O. Box 284
Woods Hole, MA 02543

11.  Exhibits

   A.   Plaintiff

1.   Photographs of winch
2.   Photographs of transfer bridge
3.   Photographs of Plaintiff
4.   Videotapes of accident scene
5.   Audiotape of Plaintiff
6.   Plaintiff's tax returns
7.   Plaintiff's earnings records from the Steamship Authority
8.   Medical records from Beth MacDonald, M.D.
9.   Medical records from Martha's Vineyard Hospital
10.  Medical records from Beth Israel Deaconess Medical Center
11.  Medical records from Shields MRI – Dartmouth
12.  Medical records from Barbara Stelle, M.D.
13.  Medical bills from Beth MacDonald, M.D.
14.  Medical bills from Martha's Vineyard Hospital
15.  Medical bills from Beth Israel Deaconess Medical Center
16.  Medical bills from Shields MRI – Dartmouth
17.  Medical bills from Barbara Stelle, M.D.

   B.   Defendants

1.   Expert Report of Henry A. McKenna, P.E. including its exhibits, attachments, calculations and references;
2.   Independent Medical Examination of the plaintiff performed by Brian Mercer, M.D.
3.   Videotapes of accident scene;
4.   Photographs of the M/V WHALING CITY EXPRESS;
5.   Specifications of the M/V WHALING CITY EXPRESS;

6.      Daily Vessel Log of the M/V WHALING CITY EXPRESS;
7.      Weather Records from the National Climatic Data Center for December 27, 2004 at Vineyard Haven, Massachusetts;
8.      Specifications for Wintech 5 ton winch Model HM 12;
9.      Parts, Operation and Maintenance Manual of Hand Winch Models, Form MHD56031, Edition 3;
10.    Memoranda from Mark Rozum, Director of Terminal Operations, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority;
11.    Copy of E-mail from Bill Cloutier of the Steamship Authority to Phillip J. Parent dated 3/23/2005;
12.    Written statement of Richard McElhinney of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority;
13.    Drawing No. TW-012-1, "50 ft Transfer Bridge, by Fay, Stafford & Klondike, Inc.
14.    Exhibits from deposition of Ethan Thomas;
15.    Exhibits from deposition of Michael Glasfeld;
16.    Exhibits from deposition of Mark Rozum;
17.    Exhibits from deposition of Raymond Debettencourt;
18.    Exhibits from deposition of Richard McElhinney;
19.    Exhibits from deposition of Dennis Vogel;
20.    Exhibits from deposition of Richard Clark;
21.    Exhibits from deposition of Carl Walker;
22.    Photographs of the subject winch;
23.    Photographs of transfer bridge;
24.    Photographs of the plaintiff;
25.    Plaintiff's tax returns 2000-2004;
26.    Plaintiff's earnings records from the Steamship Authority;
27.    Medical records from Chun Lim, M.D., Ph.D.;
28.    Medical records from Beth MacDonald, M.D.;
29.    Medical records from Martha's Vineyard Hospital;
30.    Medical records from Beth Israel Deaconess Medical Center;
31.    Medical records from Raymond Monto, M.D.;
32.    Medical records from David J. Gorenberg, M.D.;
33.    Medical records from Shields MRI; and
34.    Medical records from Barbara Stelle, M.D.
12.    <u>Parties' positions on remaining objections to the evidence in Rule 26(a)(3) disclosures</u>

The parties have been unable to resolve their objections to the evidence in their Rule 26(a)(3) disclosures. The Plaintiff's objections are as follows:

1.      McKenna report – objection – hearsay, foundation
2.      Mercer IME – objection – hearsay
7.      Weather records – objection – foundation, hearsay, failure to produce requested records,

15

the Plaintiff requested such records in his Request for Production #11, the Defendants stated that they had no responsive documents, and did not supplement that response.

10. Rozum memo - objection – hearsay, foundation, undisclosed expert opinion, unfairly prejudicial
12. McIlhenny statement – objection – hearsay
14. OneBeacon lien – objection – collateral source, relevance, unfairly prejudicial
15. Thomas deposition exhibits – objection to #12, IRS letter, hearsay, unfairly prejudicial, #13, Rozum 1/13/05 memo, hearsay, relevance, unfairly prejudicial, subsequent remedial measure
16. Glasfeld deposition exhibits – objection to #1, brochure, irrelevant
17. Rozum deposition exhibits – objection to #1, irrelevant, #7, hearsay, foundation, undisclosed expert opinion, unfairly prejudicial, #8, 10, 11, hearsay, foundation, undisclosed expert opinion, unfairly prejudicial, #9, hearsay, relevance, #13, hearsay
18. DeBettencourt deposition exhibits – objection to #1 and 2, hearsay
19. McIlhenny deposition exhibits – objection to #1, hearsay
20. Vogel deposition exhibits – objection to #1, hearsay
21. Clark deposition exhibits – objection to #1, hearsay
22. Walker deposition exhibits – objection to #1, relevance, hearsay, #2, hearsay, relevance, foundation
28-35. Medical records generally – the Plaintiff objects to any mention of health insurance or workers' compensation insurance in the medical records and bills as improper evidence of a collateral source and requests that they be suitably redacted
29. MacDonald medical records – objection to the pre-December 27, 2004 records and/or any records not having to do with the injury in question in this case as irrelevant and unfairly prejudicial
30. Martha's Vineyard Hospital medical records – see #29 objection
32. Monto medical records – objection – relevance, unfairly prejudicial
33. Gorenberg medical records - objection – relevance, unfairly prejudicial
34. Shields MRI medical records – see #29 objection

The Defendants' objections are as follows:

1. Photographs of winch
    – Objection –
Irrelevant & unfairly prejudicial; lack of foundation.

2. Photographs of transfer bridge
    – Objection –
Irrelevant & unfairly prejudicial; lack of foundation.

3. Photographs of Plaintiff
    – Objection –
Irrelevant & unfairly prejudicial; lack of foundation.

16

5.      Audiotape of Plaintiff
         – Objection –
Irrelevant & unfairly prejudicial; lack of foundation; Hearsay.

7.      Plaintiff's earnings records from the Steamship Authority
         – Objection –
Irrelevant & unfairly prejudicial; lack of foundation; Redundant information.

13.     Medical bills from Beth MacDonald, M.D.
         – Objection –
Hearsay; lack of foundation.

14.     Medical bills from Martha's Vineyard Hospital
         – Objection –
Hearsay; lack of foundation.

15.     Medical bills from Beth Israel Deaconess Medical Center
         – Objection –
Hearsay; lack of foundation.

16.     Medical bills from Shields MRI – Dartmouth
         – Objection –
Hearsay; lack of foundation.

17.     Medical bills from Barbara Stelle, M.D.
         – Objection –
Hearsay; lack of foundation.

                                            Respectfully submitted for the
                                            the Plaintiff, by his attorney,

                                            <u>/s/ David J. Berg, Esq.</u>
                                            David J. Berg, Esq.
                                            Latti & Anderson LLP
                                            30-31 Union Wharf
                                            Boston, MA 02109
                                            (617) 523-1000

                Respectfully submitted for the Defendants,
                by their attorneys,

                /s/ Thomas J. Muzyka, Esq.
                Thomas J. Muzyka, Esq.
                Terence G. Kenneally, Esq.
                Clinton & Muzyka
                One Washington Mall
                Boston, MA 02108
                (617) 723-9165

## CERTIFICATE OF SERVICE

      I hereby certify that on this date, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

                /s/ David J. Berg, Esq.
                David J. Berg, Esq.
                Latti & Anderson LLP
                30-31 Union Wharf
                Boston, MA 02109
                617-523-1000

Dated: June 28, 2007